IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| SWAN VIEW COALITION, | ) | CV 09-127-M-DWM |
| FRIENDS OF THE WILD SWAN, and | ) | |
| ALLIANCE FOR THE WILD ROCKIES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES FOREST SERVICE, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| _____ | ) | |

**I.  Introduction**

Plaintiffs Swan View Coalition, et al.,  ("Plaintiffs") bring this action

seeking judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 701-706, of agency action by the United States Forest Service concerning the

Moose Post-Fire Project in the Flathead National Forest.  Plaintiffs' First

Amended Complaint alleges that the Service acted in violation of the Endangered

Species Act (ESA"), 16 U.S.C. § 1533 *et seq.*; the National Forest Management

Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.*, and the National Environmental Policy

Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, when it issued an Amended Record of

Decision approving the Moose Post-Fire Project following remand from this

Court.  Pending before the Court are cross-motions for summary judgment on all

claims.

 It is necessary at the outset to address this Court's prior Order on the

Federal Defendants' motion to dismiss.  The Federal Defendants[1] moved to

dismiss the Plaintiffs' ESA claim, arguing that the Plaintiffs failed to identify any

particular agency action that allegedly violates the ESA.  Doc. No. 11.  In granting

the motion, the Order held that the Complaint "provides no grounds to provide the

Federal Defendants notice of the nature of the claim, let alone facts the Court

could consider to see if the claim is plausible."  Doc. No. 15 at 9.  It then discussed

whether Plaintiffs should be allowed to amend their Complaint to properly state an

ESA claim.  The Defendants argued that leave to amend would be futile because

the Forest Service did not amend its Forest Plan, and thus any ESA claim based on

---

[1]The Fish and Wildlife Service was named as a Defendant at the time of the motion to dismiss.  The parties stipulated to the dismissal of all claims against the Fish and Wildlife Service on June 17, 2010, leaving the Forest Service as the lone Defendant.  Doc. No. 23.

such an amendment is moot.

In my view this proposition was correct and I agreed that agency action amending the Forest Plan was a prerequisite for any ESA claim, stating, "The issue is whether the standard in the [Amended Record of Decision] is a forest-wide standard or something else."  Doc. No. 15 at 10.  I looked to the Ninth Circuit Memorandum to resolve the question, and interpreted the Memorandum's remand order to require the Forest Service "to explain, and to that extent amend, a portion of the Forest Plan." Id. at 11.  The Order continues, "This creates not a one-off clarification, but instead dictates how the competing land uses mandate in the Forest Plan is understood for future projects too.  Simply put, this is a 'Forest-wide standard.'" Id.  Based on that reasoning, the Plaintiffs were granted leave to amend their ESA claim.

Despite stating in stark terms that the Forest Service's action constitutes an amendment to the Forest Plan, my Order included two footnotes acknowledging points that undermine its conclusion.  In one footnote, the Court noted that "[t]here is some equivocal language in the Ninth Circuit's Memorandum."  Doc. No. 15 at 11 n.1.  The second footnote concedes that the Forest Service's Amended Record of Decision does not purport to amend the Forest Plan or state that it will be applicable to future projects on a programmatic basis.  Id. at 12 n.2.

As is explained in greater detail in the analysis below, the reasoning employed by the Court in the Order on the Defendants motion to dismiss is erroneous as a matter of substantive law and fact.  Upon careful consideration of the entire record, I believe I initially misinterpreted the circuit's disposition and now interpret the Ninth Circuit's Memorandum to require nothing more than a clarification of the agency's reasoning, although the Court concedes that due to the Memorandum's imprecise and ambiguous language, anyone could reasonably interpret the remand to require a mandatory Forest Plan amendment remedy.  More importantly, regardless of how one interprets the Ninth Circuit's Memorandum, the Forest Service did not amend the Forest Plan when it issued the Amended Record of Decision for the Moose Project.  Accordingly, the Order on the Federal Defendants' motion to dismiss is vacated to the extent that it concludes the agency amended its Forest Plan on remand.  It did not and the remand did not compel the agency to amend the Forest Plan.

It is evident that the Plaintiffs relied on the reasoning of the Order on the Federal Defendants' motion to dismiss in crafting their summary judgment arguments.  Those arguments fail for the reasons stated below.  Even so, fairness dictates that the Plaintiffs have an opportunity to reformulate their summary judgment arguments in light of this Order, if they so choose.  Plaintiffs shall have

seven days from the date of this Order in which to file written notice of any intent

to file a new summary judgment motion.  If such notice is given, the Court will

issue a new summary judgment briefing schedule.  If Plaintiffs do not provide

such notice within seven days, the Court will enter judgment consistent with this

Order.

## II.  Factual and Procedural Background[2]

### A.     The Flathead National Forest Plan and Amendments 9 and 19

The Forest Service adopted the Flathead National Forest Plan on January

22, 1986.  Swan View Coalition v. Barbouletos, 2006 WL 6198486 (D.Mont Dec.

12, 2006) at *2.  In 1989, the Service added Amendment 9 to the Forest Plan,

which incorporates into the Forest Plan the Interagency Grizzly Bear Guidelines

promulgated in 1986.  Id. at *3.  For the purposes of this case, the noteworthy

feature of Amendment 9 is the inclusion of specific descriptions and management

direction associated with each of the Management Situation designations assigned

to areas of the Forest populated by the grizzly bear, which is listed as threatened

---

[2]The complete factual background for the Flathead National Forest Plan (including Amendments 9 and 19) and the Moose Post-Fire Project is set forth in detail in the Court's Order in Swan View Coalition v. Barbouletos, 2006 WL 6198486 (D.Mont. Dec. 12, 2006), at *2-*11. Those facts are summarized here only to the extent necessary to provide context for the claims in the current case.

under ESA.  Id. at *3-*4.[3]  With respect to Management Situation 1 areas,

Amendment 9 directs that "[m]anagement decisions will favor the needs of the

grizzly bear when grizzly habitat and other land use values compete."  Id. at *3-*4

(quoting the Interagency Grizzly Bear Guidelines, 51 Fed. Reg. 42863, 42865).

In response to litigation challenging the Forest Plan's ESA compliance with

regard to the grizzly bear, the Service added Amendment 19 in 1995.  Swan View,

2006 WL 6198486 at *4.  Amendment 19 was intended to limit the harmful effects

of motorized travel in the Forest on grizzly bear habitat by imposing fixed travel

management criteria for all Bear Management Unit Subunits comprised of at least

75 percent National Forest land.  Id. at *5.  It called for each Subunit to meet the

following motorized access standards within ten years: no more than 19 percent

high density open motorized access, no more than 19 percent high density total

motorized access, and at least 68 percent security core habitat.  Id. at *5.  Under

the ten-year implementation schedule, full compliance with the 19/19/68

objectives was to be achieved in each Subunit by 2005.  Id.

---

[3]The Fish and Wildlife Service's Grizzly Bear Recovery Plan established Management Situations to facilitate land management direction associated with grizzly bears.  Grizzly population centers are designated Management Situation 1.  That designation covers over ninety percent of the Flathead National Forest land within the Northern Continental Divide Ecosystem recovery zone, including the Werner Creek and Lower Big Creek Bear Management Unit Subunits that are at issue in this case.  Swan View, 2006 WL 6198486 at *3-*4.

**B.      The Moose Post-Fire Project**

In the aftermath of the 71,000-acre Moose Fire, roughly half of which

burned on Flathead National Forest land, the Forest Service chose to pursue the

Moose Post-Fire Project (the "Moose Project") to reduce tree mortality caused by

bark beetles, recover merchantable wood fiber, and reduce future fuel

accumulation.  Swan View, 2006 WL 6198486 at *7-*8.  The Moose Project also

includes provisions relating to  travel management for certain Subunits within the

Forest.  Id. at *8-*9.  Specifically, the Moose Project establishes travel

management rules for the Werner Creek Subunit and Lower Big Creek Subunit

that, while improving on the status quo, are not in compliance with the 19/19/68

standards called for in Amendment 19 of the Forest Plan.[4]  Id.  The non-

compliance was due to two factors: the decision to seasonally re-open a previously

decommissioned section of Big Creek Road 316 and the decision to allow ten

culverts to remain in roads in the affected Subunits while still considering those

roads reclaimed under the 19/19/68 standards.  Id. at *9.

---

[4]The Forest Service failed to adhere to Amendment 19's ten-year implementation
schedule in most of the affected Subunits.  In 2004, the Forest Service requested re-initiation of
consultation with the Fish and Wildlife Service on a revised implementation schedule that would
have extended the deadline for compliance until 2009 or the adoption of a new forest plan,
whichever comes first.  In 2005, the Fish and Wildlife Service issued a biological opinion finding
that the revised implementation schedule would not jeopardize the continued existence of grizzly
bears.  Swan View Coalition v. Barbouletos, 2008 WL 5682094 (D.Mont. June 13, 2008).  The
revised Amendment 19 implementation schedule is not at issue in this case.

The Moose Project includes two project specific amendments to the Forest Plan that excuse the failure to meet the 19/19/68 standards in the Werner Creek and Lower Big Creek Subunits.  Swan View, 2006 WL 6198486 at *9.  One amendment relaxes the standards in the Werner Creek Subunit to 29/19/63, while the other allows the Service to ignore the ten retained culverts (three in the Werner Creek Subunit and seven in the Lower Big Creek Subunit) when calculating road densities for Amendment 19 compliance.  Id.  After consultation, the Fish and Wildlife Service issued "no jeopardy" biological opinions for both grizzly bears and bull trout in connection with the Moose Project.

## C.    The First Challenge to the Moose Project

A coalition of environmental advocacy groups challenged the Moose Project in a case filed in this Court in 2003, alleging violations of NEPA and NFMA against the Forest Service and an ESA violation against the Fish and Wildlife Service.  Swan View, 2006 WL 6198486 at *11-*13.  This Court granted summary judgment for the Federal Defendants on all claims, id. at *56, but for purposes of this analysis the focus is on the NFMA claim.

The Plaintiffs argued in their NFMA claim that the project-specific amendments weakening the 19/19/68 travel management rules violated the requirement in Amendment 9 of the Forest Plan that "[m]anagement decisions will

favor the needs of the grizzly bear when grizzly habitat and other land use values compete" in Management Situation 1 areas like the Moose Project area.  <u>Swan View</u>, 2006 WL 6198486 at *47.[5]  The Service argued that Amendment 9 does not require that the needs of the grizzly be elevated to the exclusion of all other interests, but rather allows for reasonable balancing of competing land uses.  <u>Id.</u> at *48.  In attempting to determine whether the agency's proposed action complies with Amendment 9, the Court looked to other provisions of the Forest Plan containing land management direction for Management Situation 1 areas.  The Court noted that the Plan "contemplates some measure of timber management, range management, fire management, mineral management and human recreation in Management Situation 1 and 2 areas."  <u>Id.</u> at *52.  The Court quoted specific Forest Plan language relating to timber management, range management, and mineral management in Management Situation 1 areas, finding in each instance that the Plan allows for other uses provided those uses did not have adverse effects on the grizzly bear.  <u>Id.</u> at 52 n.21.  With regard to human recreation, the Court quoted the Forest Plan provision stating that "[i]n Situations 1 and 2, when

_____

[5]The site-specific amendments to the Forest Plan must comply with all programmatic Forest Plan provisions (including Amendment 9) that are intended to benefit threatened and endangered species.  <u>Swan View</u>, 2006 WL 6198486 at *46 ("Project-specific amendments to the Flathead National Forest Plan must nonetheless comply with the Plan's programmatic, Forest-wide goals relating to listed species, including the grizzly bear[.]").

recreational use is determined to exceed grizzly tolerance levels as determined

through biological analysis, some means of restriction or reduction of human use

should be implemented."  Id. at 52 (quoting the Forest Plan, AR MII-26 at 58 of

334).[6]

Based on those provisions, the Court concluded that the Forest Plan's

"compete" provision does not require that the needs of the grizzly be promoted to

the exclusion of all other uses, but rather that other uses may be allowed provided

they do not "manifest a demonstrable negative effect on grizzlies or their habitat."

Swan View, 2006 WL 6198486 at *53.  The Court then relied on the

administrative record's analysis of the likely effects of the Moose Project to

conclude that the project-specific amendments are not so harmful to grizzlies that

they are "competing" uses under the Forest Plan.  Id. at *54-*55.  Accordingly, the

Court rejected the Plaintiffs' NFMA claim and granted summary judgment in

favor of the Federal Defendants.  Id. at *55.

---

[6]Citations to the Administrative Record are presented in the following format: AR [exhibit number] at [page number].  The Administrative Record submitted by the Forest Service does not contain the entire record for the Moose Project.  Rather than submit the complete original record, the Service chose to merely incorporate the original by reference.  Incorporation by reference is not useful to the Court, because administrative records from past cases are not retained but are returned to the agency at the conclusion of the case.  Despite the deficiency in the agency's submission, it appears the materials that were submitted to the Court will be adequate in this instance.

**D.      The Plaintiffs' Appeal and the Ninth Circuit's Remand**

The Plaintiffs appealed this Court's summary judgment ruling in Swan
View on the limited ground that the Court erred in rejecting the NFMA claim
based on Amendment 9's "compete" provision.  Swan View Coalition v.
Barbouletos, 307 Fed. Appx. 49 (9th Cir. 2009).  The Ninth Circuit panel did not
reach the issue of whether the Moose Project complies with Amendment 9, ruling
instead that this Court erred when it applied "a standard of its own making to
resolve the question[.]"  Id. at 51.  The panel went on to fault the Forest Service
because it "did not adopt *any* standard in either the [Final Environmental Impact
Statement] or the [Record of Decision] for evaluating when land uses 'compete'
within the meaning of the Forest Plan, or even acknowledge the requirement."  Id.
The decision to authorize the Moose Project cannot stand, the panel concluded,
because the agency "did not adequately consider a factor relevant to its
compliance with the Forest Plan[.]"  Id.

The appellate panel vacated this Court's judgment and remanded the case
with the following instructions:

> Therefore, we vacate the district court's decision so that the
> district court can issue an appropriate order, including remanding this
> case to the Forest Service so that the Service may establish and apply
> a standard for evaluating when land use values "compete" with
> grizzly bears' needs within the meaning of the Forest Plan. See

> Native Ecosystems Council v. U.S. Forest Serv., 418 F.3d 953,
> 962-64 (9th Cir.2005) (holding that the Forest Service's EIS failed to
> demonstrate that the proposed project complied with the applicable
> Forest Plan requirements, and remanding to the Forest Service to fix
> the error). The district court should direct the Forest Service to apply
> its standard to both the decision to reopen the disputed portions of
> Road 316 and the decision to leave intact ten culverts in otherwise
> decommissioned roads. With respect to both decisions, the record
> could support a finding of competing uses, depending on the standard
> the Forest Service adopts and applies.

Swan View, 307 Fed. Appx. at 51.[7]  On March 11, 2009, this Court entered an

Order remanding the Moose Project to the Forest Service.  Swan View, CV 03-

112-M-DWM, Doc. No. 71.  The Order tracks the language of the Ninth Circuit's

remand instructions.  Id.

**E.    The Forest Service's Actions on Remand**

Following the remand, the Forest Service issued an Amended Record of

Decision in April of 2009 in which the Forest Supervisor re-affirmed the original

Record of Decision implementing the Moose Project.  AR MII-1 at 1 of 6.[8]  The

Amended Record of Decision acknowledges the remand order and purports to

---

[7]Judge Callahan issued a partial concurrence in which she joined in the remand order as to the NFMA claim on Road 316, but dissented with regard to the NFMA claim on culvert retention because "leaving the ten culverts alone would be consistent with the Interagency Grizzly Bear Guidelines under any standard[.]"  Swan View, 307 Fed. Appx. at 51.

[8]The Amended Record of Decision notes that while most of the travel management actions authorized in the original Record of Decision for the Moose Project have been implemented, the actions at issue here, i.e., resizing of the retained culverts and re-opening of Road 316, had not occurred as of April 2009.  AR MII-1 at 2 of 6.

respond by "address[ing] information demonstrating that the Moose Project

complies with the applicable Forest Plan requirements." Id. at 2 of 6.  Under the

heading "Standard for Evaluating Land Uses," the Supervisor looked to the text of

the Interagency Grizzly Bear Guidelines (incorporated into the Forest Plan by

Amendment 9)[9] to determine how the "compete" provision should be applied to

the Moose Project.  Id. at 3 of 6.

The Supervisor identified the relevant standard by referencing the sentence

containing the "compete" provision as well as the subsequent sentence, resulting

in the following quote from Amendment 9: "Management decisions will favor the

needs of the grizzly bear when grizzly habitat and other land use values compete.

Land uses which can affect grizzlies and/or their habitat will be made compatible

with grizzly needs or such uses will be disallowed or eliminated."  AR MII-27 at 8

of 108.  The Supervisor implied that she views the terms "compete" and

"compatible" as two sides of the same standard, such that multiple uses do not

compete so long as they are compatible with grizzly bear needs.  AR MII-1 at 3 of

6.  The Supervisor then quoted the following language from Amendment 9's

_____

[9]Amendment 9 incorporated the Interagency Grizzly Bear Guidelines into the Forest Plan
by adding them as Forest Plan Unbound Apendix OO.  AR MII-26 at 331 of 334.  In this analysis
Unbound Appendix OO is referred to interchangeably as the Interagency Grizzly Bear Guidelines
and Amendment 9.

statement of Forest Service grizzly bear management policy:

> The [Forest Service] will manage habitats essential to bear recovery
> for multiple land use benefits, to the extent these land uses are
> compatible with the goal of grizzly recovery.
>
> Land uses which cannot be made compatible with the goal of grizzly
> recovery, and are under [Forest Service] control, will be redirected or
> discontinued.  Management guidelines and objectives, the cumulative
> effects process, and goals for habitat capability and mortality will be
> used to guide activities which are compatible with grizzly bear
> recovery.  It is also a policy of the Forest Service to facilitate
> recreation use in occupied grizzly habitat to the extent such levels or
> use are compatible with both human safety and grizzly recovery
> objectives.

AR MII-1 at 3 of 6 (quoting Amendment 9, AR MII-27 at 7 of 108).

The Supervisor also relied on specific management directions in

Amendment 9 for maintaining and improving habitat that instruct the Forest

Service to consult with the Fish and Wildlife Service as necessary and to, "[w]ith

full knowledge of the Biological Opinion, recommend project or land use

modification which will provide compatibility between grizzly bears and other

land uses without degrading conditions for grizzlies."  AR MII-27 at 11 of 108.

From these citations to the Interagency Grizzly Bear Guidelines, the

Supervisor reached two conclusions: (1) Amendment 9 allows for multiple uses in

grizzly bear habitat, including recreational uses, and (2) the proper reference point

for assessing whether another use competes with or is compatible with the needs

-14-

of grizzlies is the entire project as submitted for consultation to Fish and Wildlife

Service, not the discrete harmful aspects of the project.  AR MII-1 at 3 of 6.

Based on those conclusions, the Amended Record of Decision adopted the

following interpretation of Amendment 9's compete provision:

> The determination of compatibility is based on the proposed federal
> action, not on individual components of such action.  This is apparent
> from the [Interagency Grizzly Bear Guidelines] which utilize the
> consultation process to assist in determining the compatibility of
> proposed land uses with grizzly bear recovery goals.  Thus, the
> relevant consideration in the present case is whether the Moose
> Project, as consulted on with the [Fish and Wildlife Service], is
> compatible with grizzly bear recovery goals and objectives.  If it is, or
> can be made compatible, then the land uses encompassed by this
> [Amended Record if Decision] do not "compete" within the meaning
> of the [Interagency Grizzly Bear Guidelines].

<u>Id.</u>

The Supervisor proceeded to apply her interpretation to the Moose Project,

and concluded that the action as a whole is compatible with the needs of grizzly

bears and therefore consistent with Amendment 9 to the Forest Plan.  AR MII-1 at

3-4 of 6.  In reaching this conclusion the Supervisor emphasized the project's

significant net improvement in grizzly bear habitat.  <u>Id.</u> at 4 of 6.  The Supervisor

also noted that a recent study found current the current Northern Continental

Divide Ecosystem grizzly population is more than double what was estimated at

the time of the original Moose Project Record of Decision.  <u>Id.</u> at 4 of 6.

According to the Supervisor's reasoning, given that previous travel management rules did not restrict the growth of the grizzly population, the more favorable rules established by the Moose Project are all the more compatible with the needs of the bear. Id. at 6 of 6.[10]

At no point in the Amended Record of Decision does the Supervisor discuss amending the Forest Plan or imply that her decision authorizes a programmatic amendment.

**F.    The Present Case**

The Amended Record of Decision has now been challenged in this case by a coalition of Plaintiffs comprising most of the litigants involved in the previous case, led once again by the Swan View Coalition. The Plaintiffs allege claims under NFMA, NEPA and the ESA. Count I alleges that the Amended Record of Decision fails to comply with the Forest Plan in violation of NFMA. In Count II, Plaintiffs claim an ESA violation against the Forest Service for failing to conduct ESA § 7 consultation before enacting a new Forest Plan standard. Count III states a claim under NEPA for failure to conduct a public process before amending the

---

[10]Although she was unequivocal in interpreting Amendment 9 as setting a standard of competition and compatibility at the project level, the Supervisor also stated her view that the more contentious aspects of the project, i.e., culvert retention and re-opening of Road 316, are in compliance with Amendment 9 even when they are evaluated individually. The suspect nature of that conclusion is clear from the Supervisor's explanation, which relies entirely on the off-setting habitat improvements elsewhere in the project area. Id. at 4-6 of 6.

Forest Plan.  As framed by the arguments presented in the Plaintiffs' briefing, all

three claims in the Amended Complaint are predicated on the assumption that the

Amended Record of Decision constitutes a programmatic amendment to the

Flathead National Forest Plan.  As stated earlier, this is simply not the case.

### III.  Analysis

**A.      Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Summary judgment is particularly applicable to cases involving judicial review of

final agency action.  Occidental Engineering Co. v. INS, 753 F.2d 766, 770 (9th

Cir. 1985) (citation omitted).  Summary judgment is appropriate in this case

because the issues presented address the legality of the Federal Defendants'

actions based on the administrative record and do not require resolution of factual

disputes.

**B.      The Amended Record of Decision**

This case is unlike most environmental litigation because the parties

disagree as to the essential nature of the challenged agency action.  The Plaintiffs

contend that the agency action includes the adoption of a programmatic Forest

Plan Amendment, while the Forest Service says the Amended Record of Decision approved the Moose Project and nothing more. The discussion must therefore begin by defining the agency action: Does the Amended Record of Decision establish a new Forest Plan standard, applicable Forest-wide to all projects going forward, or does it merely authorize a timber sale with site-specific road density changes?

It is not a close question. The Amended Record of Decision is devoid of any language suggesting that the decision includes a programmatic amendment to the Forest Plan. The document's clear purpose is to explain how the project complies with Forest Plan. The Supervisor's cover letter states that the Amended Record of Decision "addresses information demonstrating that the Moose Project complies with the applicable Forest Plan requirements." AR MII-1 at 1 of 6. In announcing her decision the Supervisor states, "After reviewing the original [Moose Project Record of Decision] in conjunction with information provided in the [Amended Record of Decision], I have determined *the original decision will remain in effect and unchanged*." Id. (emphasis added). Elsewhere the Supervisor states, "I have decided to continue to implement the travel management actions associated with the original Moose [Record of Decision] (2002)." Id. at 2 of 6. In other words, the agency's action is limited to the approval of the Moose Project,

which contained only site-specific Forest Plan Amendments and no Forest-wide

management direction.

The Plaintiffs rely on several arguments to support their view that the

agency action contains a Forest Plan Amendment.  They argue that the Amended

Record of Decision contains a section captioned "FOREST PLAN STANDARD,"

which they say indicates an amendment to the Forest Plan.  Doc. No. 35 at 4, 9-10.

The problem with this argument is that it rests on a false premise; there is no such

heading in the Amended Record of Decision.  The section in question is titled

"STANDARD FOR EVALUATING LAND USES," and in it the Supervisor sets

forth an interpretation of the existing Forest Plan standard, not a new standard.

AR MII-1 at 3 of 6.

Plaintiffs also argue that the Supervisor's interpretation of Amendment 9

must have created a new Forest Plan standard because the agency has applied the

same interpretation in approving subsequent projects.  Doc. No. 35 at 3.  This

argument is at odds with Ninth Circuit authority.  For an agency document to have

the force and effect of law, the document "must '(1) prescribe substantive

rules–not interpretive rules, general statements of policy or rules of agency

organization, procedure or practice–and, (2) ... [be] promulgated pursuant to a

specific statutory grant of authority and in conformance with the procedural

requirements imposed by Congress.'" Earth Island Inst. v. Carlton, --- F.3d ----,

2010 WL 4399138 at *7 (9th Cir. 2010) (quoting W. Radio Serv. Co. v. Espy, 79

F.3d 896, 901 (9th Cir. 1996)).  The Amended Record of Decision in this case sets

forth at most an interpretive rule and is therefore not binding on the agency,

regardless of whether the same interpretive standard has been applied in the

analyses of subsequent projects.[11]  Moreover, it is unsurprising that the agency,

having recently been alerted to what the court of appeals deems a deficiency in its

NFMA explanation for the Moose Project, would endeavor to correct the problem

by including the required discussion in the NFMA analysis for subsequent

projects.

     In attempting to persuade the Court to view the agency action here a Forest

Plan amendment, the Plaintiffs rely most heavily on the Ninth Circuit's

Memorandum requiring remand to the agency.  It is only by reference to the Ninth

Circuit's Memorandum that one could plausibly assume that the Amended Record

---

[11]In fact, there is some evidence that the Forest Service had already adopted that interpretive rule prior to the issuance of the Moose Project Amended Record of Decision.  In the Decision Notice for the Red Whale Project, dated May 2008, the Forest Service responded to a public comment complaining that the project failed to favor the needs of the grizzly in Management Situation 1 habitat with the following: "The implementation of the Red Whale Project, under any of the action alternatives, will produce a net gain in habitat security for the grizzly bear and therefore clearly favors grizzly bear habitat needs."  Doc. No. 36-1 at C-40. This provides at least a suggestion that the agency had adopted a project-level interpretation of the "compete" provision nearly a year before the Moose Project Amended Record of Decision was issued.

of Decision sets forth a programmatic amendment to the Forest Plan.  The

confusion is rooted in the Ninth Circuit's remand language, which states,

> [W]e vacate the district court's decision so that the district court can
> issue an appropriate order, including remanding this case to the Forest
> Service so that the Service may establish and apply a standard for
> evaluating when land use values "compete" with grizzly bears' needs
> within the meaning of the Forest Plan.

Swan View, 307 Fed. Appx. 49 at *51.  The Plaintiffs read this language as

requiring the Forest Service to amend its Forest Plan.  This Court reached the same

conclusion in its Order granting the Defendants' motion to dismiss.  But a more

thorough and contemplative reading of the Memorandum calls that conclusion into

question.  Apart from the quoted sentence, there is nothing in the posture of the

appeal, the nature of the claim, or the language of the Memorandum to support the

inference that the appellate panel intended to issue a mandatory injunction

requiring the agency to amend its Forest Plan.

The court of appeals identified two errors in its Memorandum, one by the

Court and one by the agency.  The Court's mistake, according to the panel, was

that it "appl[ied] a standard of its own making to resolve the question[.]" 307 Fed.

Appx. at *51.  The agency erred because it failed to explicitly state how the Moose

Project complies with Amendment 9's "compete" provision, which in the panel's

view required the agency to give additional interpretive content to the provision:

> [T]he Forest Service did not adopt any standard in either the [Final Environmental Impact Statement] or the [Record of Decision] for evaluating when land uses "compete" within the meaning of the Forest Plan, or even acknowledge the requirement. We therefore conclude that the district court's grant of summary judgment to the agency defendants on this point was in error. As the Service did not adequately consider a factor relevant to its compliance with the Forest Plan, its decision cannot stand.

Id. at *51.

As articulated by the panel's Memorandum, neither error invites the remedy of a Forest Plan amendment.   This Court's error could have been addressed by remanding with instructions to reconsider the issue without reference to the supposed  improper standard applied in the first case.  As for the agency's error, described by the court of appeals as a failure to acknowledge and consider "a factor relevant to its compliance with the Forest Plan," it would seem that the remedy would be remand to the agency so that it may analyze and discuss the Moose Project's compliance with Amendment 9.

The nature of the issue presented on appeal also undermines the conclusion that the Memorandum requires a Forest Plan amendment.  The Plaintiffs raised a single NFMA claim on appeal, arguing that the Moose Project violates Amendment 9's "compete" provision.  The Plaintiffs did not challenge

Amendment 9, either in this Court or on appeal.[12]  Yet the Plaintiffs interpret the Ninth Circuit's Memorandum as issuing a mandatory injunction requiring the Forest Service to rewrite Amendment 9.  Such relief would appear to be extraordinary in light of the availability of the much less drastic but still adequate remedy of remand to the agency to consider all factors relevant to compliance with the Forest Plan.

Indeed, even the citation following the Ninth Circuit's remand instruction suggests that the Memorandum should be read to require the agency to give an explanation, and not to require an amendment to the Forest Plan.  Immediately after ordering a remand to the agency with instructions to "establish and apply a standard," the court of appeals cites Native Ecosystems Council v. U.S. Forest Serv., 418 F.3d 953, 962-64 (9th Cir. 2005), which the panel parenthetically describes as "holding that the Forest Service's [environmental impact statement] failed to demonstrate that the proposed project complied with the applicable Forest Plan requirements, and remanding to the Forest Service to fix the error."  Swan View, 307 Fed. Appx. at *51.  The Native Ecosystems panel did not order the Forest Service to amend its Forest Plan.  418 F.3d at 965-66.

_____

[12]Amendment 9 was adopted in 1989, meaning any NFMA challenge to the amendment itself is time-barred under the six-year statute of limitations.  28 U.S.C. § 2401(a).

While it is useful here to explore the language of the Memorandum in order to understand the nature of the parties' dispute, the question of what the Ninth Circuit required of the Forest Service on remand is not before the Court.  As the Plaintiffs state in their Response/Reply Brief on Summary Judgment, "Swan View is not seeking clarification or enforcement of the Ninth Circuit's mandate."[13]  Doc. No. 35 at 6.  For purposes of the claims in this case, the Court need only determine whether the agency amended its Forest Plan.  The foregoing analysis compels the conclusion that it did not.  It was not required to do so.  The Court must now evaluate the Plaintiffs' claims based on the action the agency authorized, i.e. the Moose Project, and not on the action as characterized by the Plaintiffs.

This conclusion is contrary to the Court's analysis in the Order on the Defendants' motion to dismiss.  There the Court interpreted the Ninth Circuit's Memorandum to require a Forest Plan amendment.  Doc. No. 15 at 11.  My earlier misreading of the circuit's order should not interfere with the proper resolution of the issues presented on summary judgment.  To begin, the analysis in the Order on the motion to dismiss dealt with whether the Plaintiffs might possibly be able to state an ESA claim such that they should be allowed leave to amend their

---

[13]Any such challenge would properly be brought under the original case number, as the claim would amount to an argument that the Forest Service has failed to comply with the remand Order issued by this Court.  See Swan View, CV 03-112-M-DWM, Doc. No. 71.

Complaint, and thus did not form the basis of a dispositive resolution of any issue in the case on the merits.  The statements are dicta, having no bearing on the determination of the issues on summary judgment.

Moreover, the Court may vacate its Order *sua sponte* under Fed. R. Civ. P. 60(b).  Although there is some conflict among the circuits as to whether Rule 60(b) authorizes a district judge to vacate an order *sua sponte*, the Ninth Circuit has joined those that read the rule to allow a court to act on its own motion.  See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 351-52 (9th Cir. 1999).  In that case, the Ninth Circuit cited with approval a Fifth Circuit case in which the court "held that a district judge can vacate a judgment under Rule 60(b) where 'after mature judgment and re-reading the record he was apprehensive that he had made a mistake,' and that '[t]he court could initiate this on its own motion.'"  Id. at 351-52 (quoting McDowell v. Celebrezze, 310 F.2d 43 (5th Cir. 1962)).  Such circumstances exist here.

## C.    The Plaintiffs' Claims

The arguments offered in the Plaintiffs' briefing are expressly contingent upon the assumption that the Forest Service amended the Forest Plan; each claim accuses the agency of failing to take some procedural step that is required before a programmatic Forest Plan amendment may be approved.  In arguing their Count I

NFMA claim, Plaintiffs state, "[T]he Forest Service here failed to conduct any public process or NEPA procedure, thus violating NFMA's public involvement requirements. ... Because the new grizzly bear standard is an enforceable forest-wide standard, the Forest Service has the same NFMA public process requirements as a Forest Plan amendment."  Doc. No. 25 at 12.  Plaintiffs describe their Count II ESA claim as follows:

> [T]he Forest Service's approval of the [Amended Record of Decision] violates the ESA because the [Amended Record of Decision] sets forth a new management standard for the grizzly bear, a species listed under the ESA, but the Forest Service never engaged in Section 7 ESA consultation of any kind, whether formal or informal, for the promulgation of that standard.

Id. at 8.  As to the NEPA claim alleged in Count III, Plaintiffs argue that "[t]he failure to conduct a NEPA process for the new forest-wide standard is arbitrary and capricious and violates NEPA and the APA."  Id. at 11.

Each of these claims fails because the Forest Service did not approve a new forest-wide management standard.[14]  The Federal Defendants are therefore entitled to summary judgment on all claims, subject to the Plaintiffs' opportunity to

_____

[14]The Federal Defendants also challenge the sufficiency of the Plaintiffs' 60-day notice of their intent to sue under the ESA.  Failure to comply with the notice requirement deprives the district court of jurisdiction over an ESA claim.  16 U.S.C. §1540(g)(2)(A).  The Plaintiffs provided notice of an ESA claim within the required time frame, but their letter is not entirely clear as to the nature of the intended claim.  See Doc. No. 1-2 at 2.  Even if the Court assumes that the 60-day notice letter is adequate, the ESA claim fails for the reasons set forth above.

-26-

present renewed summary judgment briefing in light of this Order.

## IV.  Order

Based on the foregoing, IT IS HEREBY ORDERED:

1.     The Court's April 26, 2010 Order on the Federal Defendants' motion to dismiss (Doc. No. 15) is VACATED to the extent set forth in this Order.

2.     The Forest Service's motion for summary judgment (Doc. No. 29) is GRANTED, and the Plaintiffs' motion for summary judgment (Doc. No. 24) is DENIED.

3.     Plaintiffs may reformulate their summary judgment arguments in light of this Order.  Plaintiffs shall have seven days from the date of this Order in which to file written notice of their intent to file a new summary judgment motion.  Upon filing of such written notice, the Court will issue a new summary judgment briefing schedule.  If Plaintiffs do not provide such notice within seven days of the date of this Order, the Court will direct entry of judgment consistent with this Order.

Dated this 1st day of March, 2011.


_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT